UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
MELINDA J. SHIEH,

            Plaintiff,
                                    **NOT FOR PUBLICATION**
                                         **MEMORANDUM & ORDER**
-against-                                 11-CV-5505 (CBA)(SMG)

FLUSHING BRANCH, CHASE BANK USA, N.A.,
and CASH, LLC, as Assignee,

            Defendants.
----------------------------------------------------------------------x
AMON, Chief United States District Judge:

Defendant Chase Bank has moved to dismiss the plaintiff's claims against it. For the reasons stated below, the motion is granted.

## I.    BACKGROUND

On September 28, 2011, plaintiff Melinda Shieh filed a complaint against Chase and co-defendant CACH, LLC (improperly plead as "Cash, LLC") concerning a debt collection matter in Queens County Civil Court. On November 10, 2011, Chase timely removed the action to this Court, based primarily on Shieh's claim under the federal Fair Debt Collection Practices Act.

In her complaint, Shieh alleges that she had a total of three credit card accounts with Chase Bank. These three accounts ended in 9154, 6903, and 3521. (Compl. ¶ 8.) Shieh claims that she at one time had an overdue balance on each of the three cards, but was eventually able to enter into settlement agreements with Chase's debt collection agents.

For account number 9154, Shieh settled the outstanding balance of $3887.38 for a lump sum payment of $2000 to Chase's debt collection agent, Associated Recovery Systems, on August 31, 2006. As to account number 6903, collection agent New Century Financial Services sued Shieh for the overdue balance in Nassau County Supreme Court in 2005. The parties were

1

able to settle the action, and it was discontinued with prejudice on June 22, 2006. (Compl., Ex. 3.) Finally, as to account 3521, collection agent Harvard Collection Services allowed Shieh to settle the balance of $2980.69 for a lump sum payment of $1300, which Shieh paid on July 23, 2006. Shieh claims that she had no other credit card accounts with Chase.

Shieh thereafter alleges that "without any notice or service to Plaintiff, in 2005 defendant Cash, LLC filed a complaint against the plaintiff in Nassau county district court and got a default judgment in the amount of $4726.84." (Compl. ¶ 23.) Shieh claims that she had "not the slightest idea why the defendants sued plaintiff and on what ground the action was based upon." (Compl. ¶ 24.) In her opposition briefing, Shieh also states that the first time she learned about the default judgment was when CACH "had the default judgment enforced by the City Marshall in June 2011," and her "wage was garnished and deducted by the City Marshall to satisfy said judgment, the accrued interests, the various fees and costs." (Pl. Opp. at 4, 8.)

Chase has submitted the default judgment to which Shieh's complaint refers. (Turcotte Decl., Ex. 2.) The document indicates that on October 7, 2005, Chase (not CACH) obtained a default judgment against Plaintiff in the amount of $4,726.84 in Nassau County District Court. The top corner of the judgment document appears to contain the account number underlying the debt at issue; the account ends in 6496, and therefore is not one of the three accounts that Shieh's complaint discusses. On April 25, 2006, Chase assigned its judgment against Shieh to CACH, LLC. This assignment is a matter of public record. (Turcotte Decl., Ex. 3.)

In her complaint, Shieh alleges, under the (somewhat amorphous) First Cause of Action, that Chase's "action against plaintiff in 2005 in Nassau County District Court [was] unjustified and without any basis," because "all plaintiff's bills with defendant were paid and/or fully settled." (Compl. ¶ 27-28.) She claims that her credit score has gone "from excellent to poor

2

based on the default judgment" and that "Defendant Chase Bank has thus effectively ruined plaintiff's credit and . . . plaintiff could not get a loan or credit from any bank." (Compl. ¶ 30.) Shieh also alleges that in connection with obtaining this default judgment, "Defendant[] Chase Bank had supplied incorrect credit information with credit report agencies." (Compl. ¶ 30.) She also refers passingly to the defendants' conduct as "fraud and extortion." (Compl. ¶ 33.) Shieh claims that she has suffered headaches, sleep deprivation and depression, and that she now has to spend "thousands of dollars to clean up [her] credit and to have her grievance heard by this Court." (Compl. ¶¶ 31-32.)

As to this First Cause of Action, the legal theory of which is never identified, Shieh seeks vacatur of the 2005 default judgment; $15,000.00 in damages against defendants Chase and CACH "for plaintiff's ruined credit, for the mental anguish she suffered, for the collection fees charged by the third party and for the attorney fees and costs plaintiff spent to protect her credit"; plus, "treble monetary damages against the defendants for their bad faith." (Compl. ¶34.)

Shieh's Second Cause of Action expressly asserts that the defendants violated § 1692g of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., based on the allegations that they "failed to provide (i) notice and the required statements to plaintiff, and they failed to verify (ii) the amount of the debt, (iii) and who was the debtor, (iv) who was the creditor and, (v) whether the debt had been paid or not." (Compl. ¶36.) Shieh claims that "as a direct and proximate cause of Defendants' failure to validate the statute of the debt and their wrongful action they instituted, Plaintiff was caused to suffer" loss of credit reputation, loss of business opportunities, and "consequential and incidental monetary damages" exceeding $10,000. (Compl. ¶ 38.)

At the time of its removal petition, Chase did not appear to have obtained consent from co-defendant CACH to removing the case to federal court. When Shieh pointed this out in her pre-motion letter, Chase responded by pointing out that CACH had not yet been served with process, and thus the "rule of unanimity" did not apply. A removing defendant may forego securing the consent of any co-defendant who has not been served with process at the time of the removal petition. See Gurney's Inn Resort & Spa, Ltd. v. Benjamin, 743 F. Supp. 2d 117, 120 (E.D.N.Y. 2010); Sherman v. A.J. Pegno Constr. Corp., 528 F. Supp. 2d 320, 330 (S.D.N.Y. 2007). Chase, in its letter response to Shieh, also submitted an affidavit from Elizabeth Garcia, an authorized representative for CACH, LLC, in which Garcia stated that to the best of her knowledge, CACH was never properly served with Shieh's summons and complaint. Ms. Garcia also stated that CACH had no objection to the removal. (See Docket entry #6.). To date, CACH has never appeared in this action, and Shieh has made no attempt to pursue her claims against it.

The Court heard oral argument on Chase's motion on March 12, 2012. Shieh's counsel continued to deny that his client had maintained any accounts with Chase other than the three described in the complaint, which she had settled. Although the legal grounds for dismissal were fairly clear, in an effort to encourage a mutually satisfactory resolution of the matter, the Court ordered Chase to provide the plaintiff with documentation demonstrating that the 2005 default judgment related to a fourth credit card account she opened with Chase. Chase thereafter provided Shieh with extensive documentation reflecting her ownership of the account ending in 6496 and the payments by personal check that she made into the account in the past. (See docket entry #19.) Shieh submitted a response in which, notably, she never outright contended that the 6496 account did not belong to her. Rather, Shieh took issue with perceived discrepancies in the

4

figures Chase used to arrive at the outstanding balance, and also asserted the rather dubious argument that the account documents "may be the product of forgery." (See docket entry #20.)

Accordingly, setting aside these factual disputes, the Court now dismisses Shieh's claims against Chase as a matter of law.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed "for failure of the pleading to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A complaint that contains only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Neither will a complaint that contains only "naked assertion[s]" without "further factual enhancement." Id. at 557.

Iqbal identifies a "two-pronged" approach to determining the sufficiency of a complaint. 129 S. Ct. at 1950. First, courts can "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.; see Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)). Second, they can then identify whether the complaint, stripped of its conclusory pleadings, "plausibly give[s] rise to an entitlement to relief." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. A court's consideration on a motion to dismiss is "limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).

### III. DISCUSSION

#### a. First Cause of Action – FCRA preemption

Although Plaintiff's First Cause of Action does not specifically reference the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., Chase argues that her claims are governed by that statute. Shieh has insisted that this cause of action is only a common law claim. Chase counters that even if the complaint alleges a common law claim, it would be preempted by the FCRA. The Court agrees.

The FCRA, first enacted in 1968, is designed to promote and ensure the accuracy and privacy of information used in consumer credit reports. See 15 U.S.C § 1681(a). "In order to protect consumers from the harm that can result when inaccurate information is disseminated into their credit reports, the FCRA prescribes specific duties on three types of entities: (1) consumer reporting agencies; (2) users of consumer reports; and (3) furnishers of information to consumer reporting agencies." Kane v. Guaranty Residential Lending, Inc., 2005 WL 1153623, at *2 (E.D.N.Y. 2005). Chase, as a lender/creditor, concedes that it qualifies as a "furnisher of information" to consumer reporting agencies.

As noted previously, in her First Cause of Action, Shieh alleges that Chase has "effectively ruined [her] credit" by improperly obtaining a default judgment against her, and consequently "suppl[ying] incorrect credit information with credit report agencies." (Compl. at

¶¶23, 27-33.) These allegations do appear to evoke the provisions of the FCRA. See, e.g., 15 U.S.C. §1681s-2(a) (discussing creditor's duty to report information and correct inaccurate information); 15 U.S.C. §1681s-2(b) (discussing creditor's obligation to investigate alleged credit report inaccuracies, upon notice from a credit reporting agency). The only express reference to what could be construed as a common law claim is plaintiff's conclusory statement at the conclusion of the First Cause of Action that "[t]he defendants have committing [sic] fraud and extortion against plaintiff and it must be undone by all the Defendants." (Compl. at ¶33.)

The Court thus agrees with Chase that to the extent Shieh is attempting to state a common law cause of action related to the credit reporting on her Chase account, such a claim is preempted by the FCRA. The FCRA's preemption provision, section 1681t(b)(1)(F), provides in relevant part:

> No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . .

Recently, the Second Circuit squarely held that this provision preempts all state law claims, whether common law or statutory, that concern the duties of furnishers of information to credit agencies. See Macpherson v. JPMorgan Chase Bank, N.A., 665 F.3d 45, 47-48 (2d Cir. 2011). As far as the Court can discern, Shieh's opposition papers do not even address Chase's preemption arguments, and the Court thus concludes that her allegations related to Chase's credit reporting are preempted.

To the extent Shieh attempts to make out a common law claim that falls outside the scope of the FCRA, her allegations are wholly conclusory and her legal theory is impossible to discern. Shieh's opposition brief provides no clarification or identification of the common law tort theory she believes she is pursuing, and contains virtually no citations to legal authority. At oral

7

argument, Shieh's counsel insisted simply that it was impermissible for CACH to garnish Shieh's wages in June 2011 when, according to Shieh, there was no outstanding debt—perhaps alluding to a common law conversion theory of recovery. However, Shieh has never presented any legal arguments or authorities suggesting why, on the facts presented here, Chase is responsible for garnishment actions taken by CACH over five years after Chase assigned away all its interest in the judgment. Her current allegations thus "present little more than 'unadorned, the-defendant-unlawfully-harmed-me accusations[s],'" and are insufficient to survive a motion to dismiss. Premium Mortgage, 583 F.3d at 108 (quoting Iqbal, 129 S. Ct. at 1949).

Finally, the Court observes that to the extent Shieh is simply contesting the propriety of the default judgment rendered in state court, this Court is without jurisdiction to hear such a claim. The Rooker-Feldman doctrine bars federal courts from hearing claims "brought by state-court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus., 544 U.S. 280, 284 (2005). This doctrine applies equally to challenges to state court default judgments. See Granger v. Harris, 2007 WL 1213416, at *5 (E.D.N.Y. 2007) ("To the extent plaintiffs claim . . . that Harris wrongfully obtained a default judgment and/or lien against Granger without properly serving her with process . . . Granger's claims are barred by the Rooker–Feldman doctrine, since, in essence, they seek to overturn the default judgment entered against Granger in the state court action."); Ballyhighlands, Ltd. v. Burns, 182 F.3d 898 (Table) at *2 (2d Cir. 1999) ("Once entered, a default judgment is a valid judgment, even if the affidavit [of service] contained allegedly false information, unless a party successfully moves to vacate that judgment pursuant to NY CPLR Rules 5015 or 317. Rooker-Feldman applies to default judgments just as it does to other types of

judgments."). If Shieh wishes to challenge the validity of the default judgment, she must move to vacate it in the rendering state court. Indeed, Shieh's counsel conceded at oral argument that this option was available, but stated simply that he had decided not to go that route.

Accordingly, if the First Cause of Action is not brought under the FCRA, then it is either preempted by the FCRA or is insufficient as a matter of law, and is dismissed.

### b. The Plaintiff's Claims are Time-Barred

#### i. FCRA

Assuming the First Cause of Action presents a claim under the FCRA, the statute of limitations period is "the earlier of (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. § 1681p; see also Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C., 701 F. Supp. 2d 340, 354 (E.D.N.Y. 2010).

Here, it is undisputed that Chase's default judgment against Shieh, which is the basis of her claims, was entered on October 7, 2005. Accordingly, the statute of limitations expired, at the latest, on October 7, 2010. Shieh commenced suit in state court nearly one year beyond this time bar, on September 28, 2011. Moreover, Chase assigned the default judgment to co-defendant CACH on April 25, 2006. (Turcotte Decl., Ex. 3.) Thus, even assuming that Chase took additional actions with respect to the account at issue before it assigned the judgment, more than five years have passed from this April 25, 2006 assignment date.

Accordingly, the FCRA claim in the First Cause of Action must be dismissed as time-barred.

### ii. FDCPA

Similarly, Shieh's Second Cause of Action, which explicitly alleges a violation of the Fair Debt Collection Practices Act ("FDCPA"), is time-barred. All claims under the FDCPA must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d); see also Wright v. Zabarkes, 347 Fed. App'x 670, 671-72 (2d Cir. 2009); Coble v. Cohen & Slamowitz, LLP, 2011 WL 5142577, at *2 (S.D.N.Y. 2011). As noted above, the default judgment at issue, and the assignment of that judgment to CACH, all occurred over five years ago, after which Chase had no further involvement in the matter. Accordingly, any FDCPA claim against Chase is untimely.

### c. The Plaintiff Fails to State a Claim

Even if Shieh had articulated a valid theory of timeliness for her FCRA and FDCPA claims, she has failed to state a claim against Chase under either statute.

### i. FCRA

As noted previously, the FCRA governs the activities of three types of entities: consumer reporting agencies, users of consumer reports and furnishers of information to consumer reporting agencies. Kane, 2005 WL 1153623, *2; O'Diah v. New York City, et al., 2002 WL 1941179, at *12 (S.D.N.Y. 2002). Relative to Chase, who concedes that it is a "furnisher of information to consumer reporting agencies," the statute imposes two duties pursuant to 15 U.S.C. § 1681s-2: (a) to report accurate information and correct inaccurate information; and (b) upon notice from a credit reporting agency that the completeness or accuracy of the information provided is disputed, to conduct an investigation, review the information in question, and report the results to the consumer reporting agency. See Kane, 2005 WL 1153623, at *3.

It is well-established that the FCRA does not permit a private cause of action arising from a creditor's failure to furnish accurate information to credit reporting agencies under subsection (a) of § 1681s-2. Section 1681s-2(d), titled "Limitation on enforcement", provides that "[Subsection (a) of this section] shall be enforced exclusively as provided under section 1681s of this title by the Federal agencies and officials and the State officials identified in 1681s of this title." See Prakash v.Homecomings Financial, 2006 WL 2570900, *2 (E.D.N.Y. Sept. 5, 2006)("Plaintiff, however, lacks standing to pursue claims under § 1681s-2(a) of the FRCA because the plain, unambiguous language of the statute limits the enforcement of this subsection to government agencies and officials."); Dolan v. Fairbanks Capital Corp., 2005 WL 1971006, at *4 (E.D.N.Y. 2005) ("there is no private cause of action under section 1681s-2(a).").

As to a claim under subsection (b), the FCRA does not require furnishers of information to investigate inaccuracies on the credit report absent the creditor receiving notice <u>from a credit reporting agency</u>. See, e.g., Prakash, 2006 WL 2570900, *2-3 ("According to the plain language of the statute, this Court finds that notice must be received by the furnisher of the information from the consumer reporting agency to trigger its duties under § 1681s-2(b)."). Accordingly, "courts that have concluded that a private right of action exists under Section 1681s-2(b) have required a plaintiff to show that the furnisher received notice from a consumer reporting agency, as opposed to the plaintiff alone, that the credit information is disputed." O'Diah, 2002 WL 1941179, at *13; see also Kane, 2005 WL 1153623, at * 5 ("[U]nless and until a furnisher of information receives notice from a credit reporting agency, no private right of action exists under section 1681s-2(b).") Here, Shieh's complaint contains no allegations that she contacted a consumer reporting agency prior to the commencement of the present action, nor that such an agency notified Chase of the dispute.

Accordingly, Shieh fails to state a claim against Chase under the FCRA.

### ii. FDCPA

In her Second Cause of Action, Shieh charges that Chase violated the FDCPA by, <u>inter alia</u>, "fail[ing] to validate the status of the [credit card] debt." (Compl. at ¶38.) This claim must be dismissed because Chase, as Shieh's former creditor, is exempted from the FDCPA.

The FDCPA prohibits the use of "false, deceptive, or misleading representations or means" by a "debt collector" in connection with "the collection of any debt." 15 U.S.C. § 1692e. Here, Shieh alleges that the defendants violated § 1692g of the statute, which requires a "debt collector" to provide the consumer with certain information in order to validate the status of the debt and allow the consumer to dispute it.

Under 15 U.S.C. § 1692a(6), a "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted <u>to be owed or due another</u>." The definition of debt collector expressly excludes "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor," and "any person collecting or attempting to collect any debt . . . to the extent such activity . . . concerns a debt which was originated by said person." <u>Id.</u> § 1692a(6)(A), (F). Under 15 U.S.C. § 1692a(4), a "creditor" is defined as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another."

Because the express terms of the statute apply only to debt collectors, "[a]s a general matter, creditors are not subject to the FDCPA." <u>Maguire v. Citicorp Retail Services</u>, Inc., 147

F.3d 232, 235 (2d Cir.1998). The only exception to this rule is where the creditor "in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." Id. (quoting 15 U.S.C. § 1692a(6)); see also Alibrandi v. Financial Outsourcing Servs., Inc., 333 F.3d 82, 85 (2d Cir. 2003) ("creditors generally are not subject to the FDCPA"); Daros v. Chase Manhattan Bank, 19 Fed. Appx 26, 27 (2d Cir. 2001) ("The FDCPA excludes entities attempting to collect debts owing to them from the definition of debt collector as long as the collector does not use a name that might lead a debtor to believe a third party had become involved in the collection effort."); Nichols v. Washington Mutual, 2007 WL 4198252, at *3 (E.D.N.Y. 2007) (creditor is not a debt collector within the meaning of FDCPA unless "false name" exception is met); Kinel v. Sherman Acquisition II LP, 2006 WL 5157678, *6 (S.D.N.Y. 2006)("Consistent with the FDCPA's definition of a debt collector, creditors are generally exempted from the FDCPA.") Here, it is clear that Chase is the original creditor, and there is no allegation that it attempted to collect the debt under a false name.

Accordingly, any FDCPA claim against Chase is dismissed.

### d. Claims against CACH, LLC

As discussed previously, Shieh's complaint also names CACH, LLC as a defendant. On December 15, 2011, Chase filed an affidavit from CACH claiming that it had never been properly served, and thus was not appearing in the action. (Docket entry #6.) Shieh has made no attempt to remedy or even address this issue or its claims against CACH. Accordingly, the plaintiff is directed to show cause within 15 days why the claims against CACH should not be dismissed without prejudice pursuant to Fed. R. Civ. P. 4(m) for failure to timely effectuate service.

## IV. CONCLUSION

For the foregoing reasons, Shieh's claims against Chase are dismissed on timeliness grounds, and for failure to state a claim upon which relief may be granted. Shieh is further directed to show cause within 15 days from the date of this Order why the claims against CACH, LLC should not be dismissed without prejudice pursuant to Fed. R. Civ. P. 4(m) for failure to effectuate service.

SO ORDERED.

Dated: Brooklyn, New York
July 6, 2012

_____/s/_____
Carol Bagley Amon
Chief United States District Judge